## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMSC-020

Filing Date: August 3, 2020

No. S-1-SC-37111

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**BENNY V. PORTER,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Angie K. Schneider, District Judge**

Released for Publication December 22, 2020.

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**THOMSON, Justice**

**{1}** The district court imposed consecutive sentences for aggravated assault with a deadly weapon and shooting from a motor vehicle after a jury convicted Defendant Benny V. Porter of both offenses based on the fact that he fired a single gunshot at a single victim. "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted *courts may not impose more than one punishment for the same offense.*" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (emphasis added); *accord Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3,

810 P.2d 1223 (observing that "the sole limitation on multiple punishments is legislative intent"). Because we conclude that the district court imposed multiple punishments for the "same offense," we reverse. *See* U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."); *accord* N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense.").

## I.      BACKGROUND

**{2}**      The undisputed facts in this case, "like all too many that come before our courts, erupted from a toxic mixture of testosterone and guns." *State v. Montoya,* 2013-NMSC-020, ¶ 4, 306 P.3d 426. Defendant dated a woman that victim Jason Swapp had also dated, during a time period when Swapp and the woman were "on a break." After Swapp and the woman reconciled, Defendant began regularly driving through Swapp's neighborhood, which irritated Swapp.

**{3}**      On May 11, 2013, Swapp was walking along a road in his neighborhood carrying a beer bottle. Defendant was driving slowly down the road in Swapp's direction when he stopped or almost stopped his vehicle and pointed a .40 caliber pistol out of the vehicle's window at Swapp. Swapp threw the beer bottle he was carrying toward the vehicle as Defendant fired a single shot and drove away. The bullet did not hit Swapp. No one else was in the street or in front of the vehicle.

**{4}**      Based on the fact that Defendant shot a single bullet at Swapp, a jury convicted Defendant of one count of aggravated assault with a deadly weapon and one count of shooting from a motor vehicle. The district court sentenced Defendant for both crimes. Defendant appealed and argued that double jeopardy required the district court to vacate one of his convictions. The Court of Appeals affirmed his convictions. *State v. Porter*, A-1-CA-35597, mem. op. (May 30, 2018) (non-precedential). Defendant appealed to this Court, and we granted certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA.

## II.      DOUBLE JEOPARDY PROHIBITS MULTIPLE PUNISHMENTS IN THIS CASE

**{5}**      Defendant argues that the district court violated his double jeopardy protections when it imposed "multiple punishments for the same offense" because the same conduct forms the basis for his convictions under two statutes. *See* NMSA 1978, § 30-3-2(A) (1963) (defining the crime of aggravated assault with a deadly weapon); NMSA 1978, § 30-3-8(B) (1993) (defining the crime of shooting at or from a motor vehicle). "The double jeopardy protections of the United States Constitution and the New Mexico Constitution guarantee that a state may not compel a person to be twice put in jeopardy for the same criminal offense." *State v. Torres*, 2018-NMSC-013, ¶ 15, 413 P.3d 467 (internal quotation marks and citation omitted) (identifying multiple punishments for the same offense as one of "three levels of protection" against double jeopardy provided by the federal and state constitutions). In this case, "the role of the constitutional guarantee is limited to assuring" that the district court did "not exceed its legislative authorization

by imposing multiple punishments for the same offense." *Brown,* 432 U.S. at 165; *accord Torres*, 2018-NMSC-013, ¶ 21.

**{6}** The Court of Appeals affirmed Defendant's multiple punishments because it concluded that *State v. Sosa*, 1997-NMSC-032, 123 N.M. 564, 943 P.2d 1017, controlled as binding precedent. *See Porter*, A-1-CA-35597, ¶¶ 5-8 ("We are bound by our Supreme Court's decision."). We pause to address the precedential value of our holding in *Sosa* before we address the arguments that Defendant made before this Court.

**{7}** In *Sosa*, the Court held that "the legislature intended separate punishments" for the two statutes at issue in this case. 1997-NMSC-032, ¶¶ 36-40 (holding that the district court did not violate double jeopardy by imposing punishments for convictions of both Section 30-3-2(A) (prohibiting aggravated assault with a deadly weapon), and Section 30-3-8(B) (prohibiting shooting at or from a motor vehicle)). The *Sosa* Court applied a mechanical *Blockburger* test, which compared the elements of the statutes in the abstract. *See* 1997-NMSC-032, ¶¶ 36-37 (presuming "that the legislature intended separate punishments for each offense" so long as both statutes require one element the other does not to establish the offense). The mechanical *Blockburger* test is sometimes referred to as the "strict elements" test. *Montoya*, 2013-NMSC-020, ¶ 31. Our double jeopardy jurisprudence has evolved significantly since we decided *Sosa*, and therefore, for the following two reasons, we explicitly abrogate *Sosa* to the extent that its conclusion was premised upon the application of an analysis that we have rejected.

**{8}** First, we *modified* the *Blockburger* analysis after *Sosa* was decided. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024 (announcing the modification of the *Blockburger* analysis); *Montoya*, 2013-NMSC-020, ¶ 46 (observing that New Mexico jurisprudence has grown "away from the historical strict mechanical elements test and increasingly toward a substantive sameness analysis"). If the statutes can be violated in more than one way, by alternative conduct, the modified *Blockburger* analysis demands that we compare the elements of the offense, looking at the State's legal theory of how the statutes were violated. *Gutierrez,* 2011-NMSC-024, ¶ 58; *accord Torres*, 2018-NMSC-013, ¶¶ 24-25. Since the two statutes at issue can be violated by alternative conduct, the strict elements test applied by the *Sosa* Court is not the proper analysis, which renders its conclusion unreliable.

**{9}** Second, the *Sosa* Court observed that "the social evils proscribed by . . . [t]he offense of shooting into an occupied vehicle is 'the possible property damage and the bodily injury that may result.'" 1997-NMSC-032, ¶ 38 (quoting *State v. Gonzales*, 1992-NMSC-003, ¶ 12, 113 N.M. 221, 824 P.2d 1023). We expressly overruled *Gonzales*, including the notion that "possible property damage" is one of the "distinct social evils" the Legislature intended to prohibit under Section 30-3-8(B). *See Montoya*, 2013-NMSC-020, ¶¶ 45, 54. After *Montoya*, the reasoning of *Sosa* is no longer supported.

**{10}**     Having rejected the application of *Sosa* to the double jeopardy analysis in this case, we now determine (1) whether the same conduct formed the basis for both of Defendant's convictions and (2) whether aggravated assault with a deadly weapon and shooting from a motor vehicle constitute the same offense in this case.

## A.     Standard of Review

**{11}**     "A double jeopardy challenge presents a question of constitutional law, which we review de novo." *Torres*, 2018-NMSC-013, ¶ 17.

## B.     Defendant's Convictions Were Based on Unitary Conduct

**{12}**     A defendant's conviction is based on unitary conduct if the acts are not "separated by sufficient indicia of distinctness." *Id.* ¶ 18 (internal quotation marks and citation omitted); *see also State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616 ("Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished."). "The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Swafford*, 1991-NMSC-043, ¶ 27. We must identify the criminal acts and the conduct at issue, and "[i]f it reasonably can be said that the conduct is unitary," then we must conclude that the conduct was unitary. *Id.* ¶ 28.

**{13}**     Although this Court is not bound by the State's concession on this point, we agree with the State that Defendant's culpable conduct was unitary.[1] *See State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130 (observing that this Court may "independently assess" an issue in a criminal appeal regardless of a concession by the state). The culpable conduct that formed the basis for both convictions is clear, Defendant fired a single shot at Swapp, who was not physically injured.

**{14}**     The State prosecuted the charge of aggravated assault with a deadly weapon based on that conduct. If the State had prosecuted a charge of aggravated assault with a deadly weapon based on Swapp's reasonable apprehension of danger from Defendant pointing the gun prior to shooting, or argued for sufficient indicia of distinctness to support that charge, a different analysis would be required. *Cf. State v. Jacobs*, 2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127 (analyzing when in a sequence of the defendant's acts there may have been sufficient evidence to support a determination that the crime of kidnapping "was complete before . . . the act of murder began"). In this case, Defendant's act of shooting a single bullet at Swapp supported both offenses.

---

[1]We acknowledge that this Court previously "assume[d] without deciding" that conduct was unitary and proceeded to analyze legislative intent, the second prong of the *Swafford* analysis, in *State v. Carrasco*, 1997-NMSC-047, ¶ 23, 124 N.M. 64, 946 P.2d 1075. Although permissible, such an analysis should be the exception rather than the rule because "determining what the Legislature intended—or perhaps more accurately, what the Legislature most likely would have intended had it contemplated the potential overlap between particular statutes—is a task for which there is no simple test." *Montoya*, 2013-NMSC-020, ¶ 33.

## C.  Defendant Was Punished Twice for the Same Offense

**{15}**  To determine whether Defendant is protected from being punished for both aggravated assault with a deadly weapon and shooting from a motor vehicle, this Court must determine whether the Legislature intended to permit multiple punishments. *Torres*, 2018-NMSC-013, ¶ 21 (acknowledging that legislative intent is the touchstone for whether multiple punishments are permissible). "[W]e first look to the language of the statute[s]" to determine whether the Legislature explicitly authorized multiple punishments. *Id.* ¶ 21 (internal quotation marks and citation omitted).

**{16}**  Neither statute in this case explicitly authorizes a court to punish a defendant for conduct that also violates another statute for which the defendant is punished. *See* §§ 30-3-2(A), -8(B). Because the plain language of the statutes at issue here does not resolve whether the Legislature authorized multiple punishments, we must turn to other canons of construction. *Torres*, 2018-NMSC-013, ¶ 21.

**{17}**  The first canon of statutory construction to which we turn is the modified *Blockburger* test, derived from the test developed in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Torres*, 2018-NMSC-013, ¶ 25; *Swafford*, 1991-NMSC-043, ¶¶ 7, 12, 30. The *Blockburger* Court compared the statutes violated to determine whether punishment for both crimes was prohibited by double jeopardy protections under the federal constitution; if one statute "requires proof of a fact which the other does not," the statutes were presumed to permit multiple punishments. 284 U.S. at 304.

**{18}**  This Court modified the original strict elements analysis "to be more in line with [the subsequent development of] United States Supreme Court precedent" because the proper analysis relies on the elements of the state's legal theory of how the statutes were violated. *State v. Swick*, 2012-NMSC-018, ¶¶ 21-27, 279 P.3d 747. Therefore, we consider the state's legal theory of the case applied to the statutes at issue to determine the elements of each offense the defendant committed. *Torres*, 2018-NMSC-013, ¶ 25. This requires us to identify how the state alleged that a defendant violated the statutes at issue so that we can determine whether a defendant was punished twice for the same offense.

**{19}**  When a defendant is charged with violating statutes that are vague, unspecific, or written in such a way that a defendant could be convicted based on alternative conduct, we review the statutory language, charging documents, and jury instructions used at trial to ascertain the state's legal theory. *See Gutierrez*, 2011-NMSC-024, ¶¶ 52-53. If the state's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening arguments, and closing arguments to establish whether the same evidence supported a defendant's convictions under both statutes. *See Swick*, 2012-NMSC-018, ¶¶ 26-27.

**{20}**  Under the modified *Blockburger* analysis, if we determine that one of the offenses subsumes the other offense, "the double jeopardy prohibition is violated, and punishment cannot be had for both." *Swick*, 2012-NMSC-018, ¶ 27 (internal quotation

marks and citation omitted). Where one of the offenses does not subsume the other offense, we must determine whether the offenses are substantially the same using other traditional canons of construction, including identifying "the particular evil sought to be addressed by each offense," determining the quantum of punishment for each statute, determining whether the statutes are typically "violated together," the rule of lenity, and other relevant factors. *See id.* ¶ 13; *Montoya*, 2013-NMSC-020, ¶ 32.

**{21}**  Both statutes in this case create offenses that may be committed by alternative conduct, so strictly comparing the language of these two statutes does not resolve the issue. Of at least seven distinct ways a defendant may commit aggravated assault, Defendant's conduct potentially satisfied two of them: "unlawfully *assaulting* . . . another with a deadly weapon" and "unlawfully . . . *striking* at another with a deadly weapon." *See* § 30-3-2 (emphasis added). Of the four distinct ways a defendant may violate "Shooting at a dwelling or occupied building; shooting at or from a motor vehicle," each could produce three distinct offenses: one being an assault and two others being batteries. *See* § 30-3-8. In some circumstances, the two statutes could be violated in ways in which one offense subsumes the other. In other circumstances, the two statutes could be violated in ways in which neither offense is subsumed. Whether one offense subsumes the other depends entirely on the State's theory of the case. Therefore, we must determine which alternative of each statute the State prosecuted to ascertain the offenses for which Defendant was convicted and punished.

**{22}**  First, we discard any provisions that are not necessary to establish a defendant's specific violations of the statutes in question. Next, we determine the case-specific meaning of any vague or indefinite terms. This process establishes the elements of the legal theory that the state applied to the defendant's conduct for each relevant statute that resulted in a conviction. We then determine whether the elements of one of the offenses subsume the elements of the other. *See Swick*, 2012-NMSC-018, ¶¶ 26-27 (applying this analysis to a defendant's two convictions and concluding that punishment for both violated double jeopardy).

## 1.    Legal theory of Defendant's aggravated-assault conviction

**{23}**  Since the statute prohibiting aggravated assault, § 30-3-2, is written in the alternative, a defendant may violate this statute by attempting but failing to accomplish a battery or by threat or menacing conduct. We start by looking at the charging documents. The State charged Defendant with

> Count 1: Aggravated Assault (Deadly Weapon)(FE) (0056), on or about
> May 11, 2013, [Benny V. Porter] did assault or strike at Jason Swapp, with
> a [.]40 caliber hand gun, a deadly weapon, a fourth degree felony,
> contrary to Section 30-3-2(A) & 3[1]-18-16, NMSA 1978.

**{24}**  The charging documents identify a single victim and the type of deadly weapon used. However, the charging documents do not resolve which alternative the State prosecuted: "assaulting" or "striking at." *See id.* Because the State's legal theory is not

clearly established by the charging documents, we next review the jury instructions. *See Swick*, 2012-NMSC-018, ¶ 21.

**{25}** Jury Instruction 6 was modeled after UJI 14-305 NMRA and required the jury to find:

1. The Defendant shot a bullet at Jason Swapp.
2. The Defendant's conduct caused Jason Swapp to believe the Defendant was about to intrude on Jason Swapp's bodily integrity or personal safety by touching or applying force to Jason Swapp in a rude, insolent or angry manner.
3. A reasonable person in the same circumstances as Jason Swapp would have had the same belief.
4. The Defendant used a deadly weapon.
5. The Defendant did not act in self-defense.
6. This happened in New Mexico on or about May 11, 2013.

*Id.* ("Aggravated assault; threat or menacing conduct with a deadly weapon; essential elements."). Although the prosecutor clearly modeled the instruction on the threat or menacing conduct uniform instruction, this instruction does not clarify whether the State prosecuted Defendant for "striking at" Swapp with a bullet or for "assaulting" by the threat or menacing conduct of shooting a bullet at him and missing. This is because, in order to find that Swapp experienced, and the Defendant committed, an assault by menacing conduct, the first element of the instruction given necessarily required the jury to find that Defendant committed an attempted, incomplete battery.

**{26}** On appeal, the State argues that the Court should construe the State's legal theory to be limited to "a threatening or menacing conduct theory pursuant to" NMSA 1978, Section 30-3-1(B) (1963) and Section 30-3-2(A). This argument disregards the instruction's requirement that the jury find that "Defendant shot a bullet at Jason Swapp," not over his head or near him. The State essentially required the jury to find all the elements necessary to establish an attempted, incomplete battery for "striking at" the victim. *See* §§ 30-3-1(A), -2(A).

**{27}** Thus, the State's legal theory is not clarified by either the charging documents or jury instructions, and both possible legal theories required "the use, attempted use, or threatened use of physical force against the person of another." *See United States v. Silva*, 608 F.3d 663, 669-700 (10th Cir. 2012) (discussing the two theories in analyzing Section 30-3-2(A) in a different context), *abrogated on other grounds by Mathis v. United States*, ___U.S. ___, 136 S. Ct. 2243 (2016). Regardless of which possible alternative the State prosecuted, the State identified the same use of force—shooting at Swapp.

**2.     Legal theory of Defendant's shooting-from-a-motor-vehicle conviction**

**{28}** Because the statute that prohibits shooting at or from a motor vehicle, § 30-3-8, is also written in the alternative and indefinite terms, we must identify the alternative that was prosecuted and resolve any issues of vagueness before we compare the elements of this offense to the element of the offense of aggravated assault. We, again, begin with the charging document. The State charged Defendant with

> Count 2: Shooting At or From a Motor Vehicle (No Great Bodily Harm) (0084), on or about May 11, 2013, [Benny V. Porter] did willfully and unlawfully discharge a firearm from a motor vehicle with reckless disregard for the safety of any other person, a fourth degree felony, contrary to Section 30-3-8(B), NMSA 1978.

**{29}** The charging document clarifies that the State prosecuted Defendant for violating the statute by "shooting . . . from a motor vehicle." However, it does not identify the victim; it does not clarify the indefinite and vague term in Section 30-3-8(B), "person of another." Because we must clarify whether Defendant was found to have recklessly disregarded the safety of Swapp or some other person in order to determine the offense committed, we next review the jury instruction. *See Swick*, 2012-NMSC-018, ¶ 21.

**{30}** Jury Instruction 8 required the jury to find:

1. The Defendant willfully shot a firearm from a motor vehicle with reckless disregard for another person.
2. The Defendant did not act in self-defense.
3. This happened in New Mexico on or about May 11, 2013.

Like the charging document, this instruction does not clarify the indefinite and vague "another person." However, to find "reckless disregard," the jury must find that Defendant "knew that his conduct created a substantial and foreseeable risk, that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others." *See* UJI 14-342 NMRA Use Note 3 (incorporating the definition of "reckless disregard" into this jury instruction for shooting at or from a motor vehicle by reference to UJI 14-1704 NMRA). Therefore, the State's theory must identify a victim or victims, specific persons endangered, in order to establish Defendant's knowledge of those victims. Since the offense is not clarified by the charging documents and jury instructions, we turn to the State's presentation at trial. *See Swick*, 2012-NMSC-018, ¶¶ 26-27 (reviewing opening and closing statements to determine the State's legal theory).

**{31}** The State emphasized in its closing argument that the reasonable belief under Count 1 that "Swapp's bodily integrity or personal safety" was threatened was based upon the same evidence it relied upon under Count 2 to prove that Defendant acted "with reckless disregard of another." Specifically, the State argued, "because if you can find the elements in this count [aggravated assault with a deadly weapon, Count 1], then [Count] 2 is easy. It's just was he in a motor vehicle, did he shoot out, was there reckless disregard. Well sure it was; there was reckless disregard of another, namely

Mr. Swapp." It is clear that Swapp was the only victim in this case. *See Swick*, 2012-NMSC-018, ¶ 22 (observing that "[a]lthough the indictment, the jury instructions, and the verdict forms are silent as to the identity of the . . . victims," the identity of the victims was not actually in dispute). Having reviewed the possible alternatives and identified and clarified the offenses for which Defendant was actually convicted, we now compare those offenses to see if one is subsumed.

### 3.   Comparing the State's theories of aggravated assault and shooting from a motor vehicle

**{32}**   The State argues that neither offense subsumes the other because "[r]eckless disregard was not required for aggravated assault[,]" and shooting from a motor vehicle does not require that the victim reasonably believed Defendant "was about to intrude on victim's bodily integrity or personal safety by touching or applying force to victim in a rude, insolent, or angry manner." The State argues that the offenses therefore require different "intents." The State's position ignores the "substantive sameness" of the crimes. *See Montoya,* 2013-NMSC-020, ¶ 46 (observing that "[o]ur double jeopardy jurisprudence has [grown] . . . increasingly toward a substantive sameness analysis").

**{33}**   To find reckless disregard, the jury was necessarily required to find that Defendant "knew that his conduct created a substantial and foreseeable risk [to Swapp], that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of [Swapp]." *See* UJI 14-342 Use Note 3 ("Shooting at or from a motor vehicle; no injury; essential elements.") (requiring a definition of "reckless disregard" by modifying the definition provided in UJI 14-1704). In context, there is no substantive difference between the culpable mens rea of the two offenses. Both required the jury to find that Defendant recognized that he was putting Swapp's personal safety and bodily integrity at risk and disregarded that risk when he shot at Swapp.

**{34}**   Both aggravated assault and shooting from a motor vehicle are general intent crimes. *See State v. Manus*, 1979-NMSC-035, ¶¶ 12-14, 93 N.M. 95, 597 P.2d 280 (holding that the state was only required to prove that the unlawful act was done with general criminal intent in an aggravated assault), *overruled on other grounds by Sells v. State*, 1982-NMSC-125, ¶¶ 9-10, 98 N.M. 786, 653 P.2d 162; *State v. Dominguez*, 2005-NMSC-001, ¶ 18, 137 N.M. 1, 106 P.3d 563 (holding that the "intent to injure . . . is not an element of shooting at or from a motor vehicle"), *overruled on other grounds by Montoya*, 2013-NMSC-020, ¶ 54; *see also* UJI 14-342 Use Note 5 (providing that the general criminal intent instruction, UJI 14-141 NMRA, must be given after the instruction for shooting from a motor vehicle without injury). The State's argument that the offenses required Defendant to have different culpable intents for double jeopardy purposes is unpersuasive.

**{35}**   As we observed in *Montoya*, "[i]n light of double jeopardy concerns and given the inherent dangers of overcharging . . . it is particularly important that the judiciary embrace its unique responsibility to assure the basic fairness and adherence to

legislative intent that only the courts can afford." 2013-NMSC-020, ¶ 46 (internal quotation marks and citation omitted). Whether we proceed under an analysis based on Defendant's prosecution for "striking at" or "assaulting" by "threat or menacing conduct," the ultimate result remains the same. Defendant was punished twice for the same offense. Based on the instructions given, which become the "law of the case," the State reasonably could be said to have prosecuted either alternative. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (observing that uncontested jury instructions "become the law of the case" when reviewing a challenge to the sufficiency of the evidence). And so, we first analyze the "striking at" alternative followed by the "threat or menacing conduct" alternative.

### a.    Analysis under the "striking at" alternative

**{36}** If Defendant was convicted for striking at the victim, the offense of aggravated assault with a deadly weapon was subsumed by the offense of shooting from a motor vehicle. The only difference between the two offenses in this case was that shooting from a motor vehicle required proof that Defendant was sitting in a motor vehicle when he committed the attempted, incomplete battery. Defendant shot a single shot at a single victim that did not result in a physical injury. Double jeopardy protections therefore bar punishing Defendant for both offenses. *See Swafford*, 1991-NMSC-043, ¶ 30 (establishing that if one of the offenses is "subsumed within the other, the inquiry is over . . . punishment cannot be had for both").

### b.    Alternative analysis for a conviction based on a theory of assault by "threat or menacing conduct"

**{37}** If Defendant was convicted for assaulting based on a theory of threat or menacing conduct, arguably neither offense is subsumed by the other. And it is clear that although the instruction given required the jury to find that Defendant struck at Swapp, the instruction was nonetheless based on the uniform instruction for aggravated assault by threat or menacing conduct. *See* UJI 14-305; *Holt*, 2016-NMSC-011, ¶ 20. Aggravated assault did not require a finding that Defendant shot from within a motor vehicle, and shooting from a motor vehicle did not require a finding that the victim reasonably feared for his personal safety. If neither offense subsumes the other, we must turn to other traditional canons of construction, including identifying "the particular evil sought to be addressed by each offense," determining the quantum of punishment for each statute, determining whether the statutes are typically "violated together," the rule of lenity, and any other relevant factors. *See Montoya*, 2013-NMSC-020, ¶ 32; *Swick*, 2012-NMSC-018, ¶ 13. Using these other canons of construction, we must resolve whether the offenses are substantially the same offense. *See Montoya*, 2013-NMSC-020, ¶ 46.

**{38}** Both statutes are directed toward protecting from the same social harm: threats or overt acts against a person's safety. *Montoya*, 2013-NMSC-020, ¶¶ 45, 50; *Swick*, 2012-NMSC-018, ¶ 29. *Montoya* instructs that this determination—that two statutes are

directed toward protecting from the same social harm—weighs in favor of concluding that double jeopardy prohibits imposing multiple punishments. 2013-NMSC-020, ¶ 52.

**{39}** The State urges this Court to reconsider the social harm to be redressed and to distinguish the social harm redressed by aggravated assault from the social harm redressed by shooting from a motor vehicle. The State argues that aggravated assault should be considered an assaultive crime "targeted to mental harm," while shooting from a motor vehicle should be considered a battery crime "targeted to physical harm." The State's argument disregards the Legislature's choice when it prohibited shooting from a motor vehicle, to distinguish between assaultive (potential) harm and battery (actual) harm in assigning levels of punishment for the alternative offenses based on the degree of harm. *See* § 30-3-8(B) (distinguishing between the assaultive alternative, no bodily injury (a fourth-degree felony) and the two battery alternatives, bodily injury (a third-degree felony) and great bodily injury (a second-degree felony)).

**{40}** We previously reasoned that when the offense of shooting at or from a motor vehicle results in a physical injury, the offense is a form of aggravated battery. *See State v. Tafoya*, 2012-NMSC-030, ¶ 27, 285 P.3d 604 (determining that the "Legislature intended to punish shooting from or at a vehicle as an elevated form of aggravated battery" in comparing the result of the "most severe form of aggravated battery" to "*the same magnitude of injury* in the context of shooting from a [motor] vehicle" (emphasis added) (adopting the reasoning of the dissent in *Dominguez*, 2005-NMSC-001, ¶ 37 (Chávez, J., dissenting)). By extension, when the offense of shooting at or from a motor vehicle does not result in a physical injury, the offense is a "form of aggravated" assault. *See Tafoya,* 2012-NMSC-030, ¶ 27; *accord State v. Comitz*, 2019-NMSC-011, ¶¶ 30-31(reasoning that where a single act harmed a single victim but resulted in two convictions under two alternative theories of the crime, one of the convictions must be vacated). The offenses in this case were substantially the same, differentiated only by the location of the Defendant when he simultaneously committed both offenses.

**{41}** Finally, we observe that "[i]f after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Swick*, 2012-NMSC-018, ¶ 13. "[B]ecause reasonable minds can differ as to the Legislature's intent in punishing the [ ] two crimes," we also apply the rule of lenity to conclude that double jeopardy prohibits punishing Defendant for both offenses in this case. *Montoya*, 2013-NMSC-020, ¶ 51(second alteration in original) (internal quotation marks and citation omitted).

**{42}** Therefore, one of Defendant's convictions must be vacated consistent with our case law. *See, e.g.*, *Montoya*, 2013-NMSC-020, ¶ 55 ("[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence."); *see also State v. Mercer*, 2005-NMCA-023, ¶ 29, 137 N.M. 36, 106 P.3d 1283 (expressing no opinion on which conviction should be vacated if the convictions are for "the same degree felonies"). Where, as here, both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court. *See* § 30-3-2

("Whoever commits aggravated assault is guilty of a fourth degree felony"); § 30-3-8(B) ("Whoever commits shooting . . . from a motor vehicle that does not result in great bodily harm to another person is guilty of a fourth degree felony.").

## III.    CONCLUSION

{43}    Although double jeopardy protects Defendant from being punished for both aggravated assault with a deadly weapon and shooting from a motor vehicle in this case, we note that it is possible for a defendant to violate both statutes without committing the same offense. Whether a defendant is protected will depend on which alternative was prosecuted based on the state's legal theory of the offense and the alternative for which the defendant is convicted. We reverse the Court of Appeals and remand to the district court to vacate one of Defendant's convictions consistent with our case law.

{44}    IT IS SO ORDERED.

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**NAKAMURA, Justice (specially concurring).**

{45}    I join in the Court's conclusion that Defendant's convictions violate his double jeopardy right to be free from multiple punishments for the same offense. My path to this result is similar, but more direct than the majority's, so I write separately.

{46}    This is a double-description case, "where the same conduct results in multiple convictions under different statutes." *Swick*, 2012-NMSC-018, ¶ 10; *see Swafford*, 1991-NMSC-043, ¶ 9. Since our decision in *Swafford*, we approach a defendant's double-description challenge through a two-part test, asking (1) whether the conduct underlying the offenses is unitary, and (2) whether the legislature intended to create separately punishable offenses. 1991-NMSC-043, ¶ 25. "[I]f the first part of the test is answered in the affirmative, and the second in the negative, . . . the double jeopardy clause prohibit[s] multiple punishment in the same trial." *Id.* Here, the parties and this Court agree that the conduct underlying the offenses is unitary. *Maj. op.* ¶¶ 12-14. The remaining question is whether the New Mexico legislature intended to create separately punishable offenses. Because no express provision in either statute answers this question, and because both offenses contain alternative elements, we examine the

State's theory to decipher whether the offenses, as tried in this case, are separately punishable. *Swafford*, 1991-NMSC-043, ¶ 30; *see Swick*, 2012-NMSC-018, ¶ 12.

**{47}** With respect to the charge of shooting from a motor vehicle, the jury instruction reflects, in relevant part, that Defendant "willfully shot a firearm from a motor vehicle with reckless disregard for another person," namely, Swapp. With respect to the charge of aggravated assault, the jury instruction provides, in relevant part, that Defendant shot a bullet at Swapp, causing Swapp to reasonably believe that Defendant was about to intrude on Swapp's bodily integrity or safety by touching him in a rude or insolent manner, and that Defendant used a deadly weapon. The jury was also given a "general intent" instruction, requiring the State to prove that Defendant acted intentionally as to both charges.

**{48}** The aggravated assault instruction may be an admixture: it arguably combines attempted battery (i.e., attempting to shoot Swapp), one species of aggravated assault, with menacing or threatening another with a deadly weapon, another species of aggravated assault. UJI 14-306 NMRA, Use Note 1. But the aggravated assault statute itself combines threatening or menacing and attempted battery as a single alternative, stating that "[a]ggravated assault consists of . . . unlawfully assaulting or striking at another with a deadly weapon," Section 30-3-2(A), suggesting that "assaulting or striking at" are overlapping concepts for purposes of the conduct punishable under the statute. *See also* UJI 14-304 NMRA, Comm. Commentary (expressing the view "that the concept of 'striking at' [is] included within the concept of 'assault by attempted battery' [such that it was unnecessary to] include the 'striking at' language in th[e] instruction" on aggravated assault by attempted battery). In any event, taking the instructions given as the law of the case, the jury was required to find that Defendant intentionally shot his weapon in a manner that threatened Swapp's personal safety and bodily integrity. *See State v. Ramirez*, 2018-NMSC-003, ¶¶ 17, 23, 409 P.3d 902 (holding that jury instructions become the law of the case in a substantial evidence analysis, and that "the mens rea element necessary to establish aggravated assault is general criminal intent, i.e., conscious wrongdoing"); UJI 14-141 (defining general criminal intent as the requirement that "the defendant acted intentionally when he committed the crime"). This conduct, and the intent behind it, is substantively the same as shooting a firearm with reckless disregard for Swapp's safety (i.e., knowing, and disregarding, that firing his weapon created a substantial and foreseeable risk to Swapp's safety and welfare). *Montoya*, 2013-NMSC-020, ¶ 46; *see* UJI 13-342, Use Notes 3 and 5 (noting that a general intent instruction must be given with the instruction for shooting from a motor vehicle). The aggravated assault charge adds the element of the *victim's* subjective and reasonable belief of an imminent battery, and shooting from a motor vehicle specifies the location of Defendant in a motor vehicle. However, the shared purposes of the statutes at issue and the rule of lenity counsel that these two distinctions do not demonstrate a legislative intent to create separately punishably offenses in a case such as this one. *Maj. op.* ¶¶ 39-41.

**{49}** Thus, one of Defendant's convictions must be vacated.

**JUDITH K. NAKAMURA, Justice**