This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40445**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**EDGAR ALEJANDRO MENDEZ,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Edgar Alejandro Mendez was convicted in the First Judicial District Court, in Santa Fe County, of multiple charges arising out of two separate incidents: a motor vehicle accident occurring on June 7, 2018, and an altercation with police officers a week later on June 13, 2018.[1] On appeal, Defendant argues the following: (1) several

---

1Although Defendant was charged separately for the two incidents, the cases were joined for trial.

of his convictions related to the June 13 incident violate double jeopardy; (2) the jury instructions for the charges of accidents involving death or personal injuries omitted an essential element; (3) Defendant was coerced into waiving his right to a speedy trial; (4) Defendant was deprived of his right to enter into a conditional plea agreement; and (5) the district court lacked jurisdiction to sentence Defendant as a habitual offender.

{2}     Agreeing with Defendant that his right to be free from double jeopardy was violated, we reverse Defendant's convictions for resisting or abusing an officer as charged in Counts 11 and 13 of the amended grand jury indictment and otherwise affirm his remaining convictions.

**DISCUSSION**

{3}     Because this is an unpublished, memorandum opinion written solely for the benefit of the parties, and the parties are familiar with the factual and procedural background of this case, we omit a background section and discuss the facts only as necessary to our analysis of the issues.

{4}     For the June 7 motor vehicle accident, Defendant was convicted of one count of homicide by vehicle, contrary to NMSA 1978, Sections 66-8-101(A), (D) (2016) and 66-8-113 (1987); one count of great bodily harm by vehicle, contrary to Sections 66-8-101(B), (E) and 66-8-113; two counts of accidents involving death or personal injuries, contrary to Section 66-7-201(C) (1989); and two counts of failure to give immediate notice of accidents, contrary to Section 66-7-206 (1991, amended 2021). On appeal, Defendant argues that the jury was not instructed as to an essential element of the two charges related to accidents involving death or personal injuries.

{5}     For the June 13 incident, Defendant was convicted of one count of aggravated battery upon a peace officer, contrary to NMSA 1978, Section 30-22-25(C) (1971); two counts of aggravated assault upon a peace officer, contrary to NMSA 1978, Section 30-22-22(A)(1) (1971); one count of evading an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981);[2] two counts of resisting or abusing an officer, contrary to Section 30-22-1(D) (1981); and one count of concealing identity, contrary to NMSA 1978, Section 30-22-3 (1963). On appeal, Defendant argues that his convictions for resisting, evading, abusing or obstructing an officer and his convictions for aggravated battery upon a peace officer and aggravated assault upon a peace officer are based on the same conduct and violate his double jeopardy rights.

{6}     Independently, Defendant argues that he was unconstitutionally coerced into waiving his right to a speedy trial and was prevented from entering into a plea agreement, which would have resulted in a shorter sentence. Consequently, Defendant

---

2As to this charge we note that although the "Amended Grand Jury Indictment" alleges that Defendant committed the crime of resisting, evading or obstructing an officer "in that . . . Defendant did resist or abuse [the officer]," the jury instruction for this charge instructed the jury to find Defendant guilty if they found beyond a reasonable doubt that "[D]efendant . . . fled, attempted to evade or evaded [the officer]." Thus, we will refer to this charge as an evading charge and not a resisting charge.

requests that all his convictions be vacated. Lastly, Defendant argues that the district court lacked subject matter jurisdiction to sentence him as a habitual offender, and that his sentence should be reduced accordingly.

**{7}** We address each of Defendant's arguments beginning with his double jeopardy argument.

## I. Double Jeopardy

**{8}** Defendant argues that his convictions for resisting, evading, abusing or obstructing an officer and his convictions for aggravated battery upon a peace officer and aggravated assault upon a peace officer violate double jeopardy. "Aggravated battery upon a peace officer consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while [they are] in the lawful discharge of [their] duties," and any person who does so "with a deadly weapon or in any manner whereby great bodily harm or death can be inflicted, is guilty of a third[-]degree felony." Section 30-22-25(A), (C). Aggravated assault upon a peace officer consists of "unlawfully assaulting or striking at a peace officer with a deadly weapon while he is in the lawful discharge of his duties." Section 30-22-22(A)(1). Resisting, evading, abusing, or obstructing an officer consists, in relevant part, of

> B. [I]ntentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest [them];
>
> . . . .
>
> D. [R]esisting or abusing any . . . peace officer in the lawful discharge of [their] duties.

Section 30-22-1(B), (D).

## A. Standard of Review

**{9}** This Court reviews double jeopardy challenges de novo. *State v. Begaye*, 2023-NMSC-015, ¶ 11, 533 P.3d 1057. Defendant's challenge falls into the category of "double description" cases, in which a defendant is charged with violations of multiple criminal statutes premised on the same alleged course of conduct. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. For "double description" cases, a two-part test applies asking whether (1) the conduct was unitary, i.e., the same conduct violated multiple statutes, and (2) the Legislature intended to allow for separate punishments. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

**B.      Unitary Conduct**

**{10}**    In determining whether conduct was unitary, "we look to whether [the] defendant's acts have sufficient indicia of distinctness." *State v. Contreras*, 2007-NMCA-045, ¶ 21, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted); *see DeGraff*, 2006-NMSC-011, ¶ 27. To determine whether Defendant's actions were sufficiently distinct, we apply six factors identified in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. *See State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (applying the *Herron* factors "in the double description analysis to determine whether a defendant's acts are unitary or distinct"). The six *Herron* factors include: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12. Where it is clear that the conduct is "not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished," then the conduct is unitary. *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616.

**{11}**    This Court also looks to "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury" as well as "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses" to aid in our analysis of distinctness. *State v. Vasquez*, 2024-NMCA-020, ¶ 8, 542 P.3d 806 (internal quotation marks and citation omitted); *see State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 (considering the elements of the crimes, the facts presented at trial, and the instructions given to the jury); *DeGraff*, 2006-NMSC-011, ¶¶ 28-30 (considering the statutory definition of the crime, the instructions given to the jury, and the evidence presented at trial). Evidence that one crime was complete before the other began also indicates that the conduct at issues is not unitary. *See Sena*, 2020-NMSC-011, ¶ 46. After "identify[ing] the criminal acts and the conduct at issue . . . if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." *State v. Porter*, 2020-NMSC-020, ¶ 12, 476 P.3d 1201 (alteration, internal quotation marks, and citation omitted).

**{12}**    The following facts formed the basis of Defendant's convictions resulting from his interactions with police on June 13, 2018. On that date, Santa Fe Police Department Officer Derick Romero observed Defendant behaving erratically on Cerrillos Road. Officer Romero conducted a welfare check on Defendant, who told the officer that he was fine. After Officer Romero concluded this initial interaction with Defendant, the officer continued to observe Defendant, at which point he saw Defendant run across Cerrillos Road, nearly being struck by a motor vehicle. Upon observing Defendant jaywalk, Officer Romero again approached Defendant. As Officer Romero approached, Defendant fled, and Officer Romero pursued. While he was fleeing from Officer Romero, Defendant picked up rocks and a piece of cinder block. Officer Romero pursued Defendant into a field, where Defendant threw a rock at the officer. Officer Romero repeatedly commanded Defendant to drop the objects and stop running away. Additional officers—Detectives Ryan Romero and Byron Campbell—arrived on scene to

assist. The Detectives also commanded Defendant to drop the items he had in his hands, but Defendant did not comply. Defendant threw a rock at Detective Campbell's head, missing him. When Detective Romero moved to tackle Defendant, Defendant struck Detective Romero on the head with a piece of concrete. After some physical resistance from Defendant, the officers were able to restrain and arrest him.

**{13}** Based on these facts and circumstances, we conclude: (1) the conduct supporting the charges regarding Defendant's interactions with Officer Romero was sufficiently distinct and therefore not unitary; and (2) the conduct supporting the charges regarding Defendant's interactions with Detective Romero and Detective Campbell were not sufficiently distinct and therefore unitary. We explain.

### 1. Defendant's Interaction With Officer Romero

**{14}** As a result of his interactions with Officer Romero, Defendant was charged with and convicted of one count of resisting, evading or obstructing an officer and one count of aggravated assault upon a peace officer. In considering Defendant's conduct related to his interaction with Officer Romero in light of the *Herron* factors, we are unable to determine whether Defendant's conduct was unitary. The acts that could reasonably constitute the offenses (Defendant's flight, refusal to heed Officer Romero's commands, and his throwing of the rock) were not separated in time and space, with the entire incident occurring over a period of five minutes. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 7, 545 P.3d 1156 (finding that multiple acts were "close together in time and space" where the entire incident occurred over a period of "seven or eight minutes tops" (internal quotation marks omitted)). Additionally, the acts were part of one continuous course of conduct, Officer Romero was the single victim, there was no intervening event between Defendant's actions, and no meaningful change or alteration in Defendant's behavior between acts to render them distinct. *See Phillips*, 2024-NMSC-009, ¶ 12; *see also State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 ("Distinctness may . . . be established by the existence of an intervening event, the defendant's intent as evinced by [their] conduct and utterances, the number of victims, and the behavior of the defendant between acts." (internal quotation marks and citation omitted)). Furthermore, it is clear that all of Defendant's actions were driven by a single overarching goal and objective: to get away from the officer. *See Phillips*, 2024-NMSC-009, ¶ 12; *Barrera*, 2001-NMSC-014, ¶ 36; *see also State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521 ("Distinctness may be established by . . . looking to . . . the defendant's mens rea and goals during each act."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. These factors all speak to a finding of unitary conduct.

**{15}** On the other hand, the acts were not "contained spatially," with the event involving a chase during which Defendant and Officer Romero continuously changed locations while moving down multiple streets and into an open field. *See Lorenzo*, 2024-NMSC-003, ¶ 7 (reviewing, in the context of a unitary conduct analysis, whether the conduct at issue takes place in a single, limited location). Additionally, there is a clear sequencing to the acts: Defendant initially fled from Officer Romero, ignoring his

directives, before turning and throwing a rock at the officer. These factors indicate that Defendant's conduct was not unitary. Because the *Herron* factors do not allow for a definitive conclusion regarding whether Defendant's conduct was unitary, we next consider the facts and instructions given to the jury to determine if Defendant's conduct was unitary.

**{16}** Taking account of "the facts presented at trial, and the instructions given to the jury" it is clear that "the jury reasonably could have inferred independent factual bases for the charged offenses." *See Vasquez*, 2024-NMCA-020, ¶ 8. In this instance the jury instructions provided that in order to find Defendant guilty of aggravated assault on Officer Romero, the jury was required to find that Defendant (1) intended to commit battery against Officer Romero, (2) began the act but failed to commit the battery, (3) used a large rock, i.e., a deadly weapon, (4) knew Officer Romero was a peace officer, and (5) threatened Officer Romero's safety and challenged his authority. It is indisputable from this instruction that the conduct at issue regarding the charge of aggravated assault on Officer Romero was Defendant's act of throwing the rock. In contrast, in order to find Defendant guilty of evading Officer Romero, the jury was required to find, in relevant part, that Defendant "fled, attempted to evade or evaded [Officer] Romero." Although this instruction is written with several alternatives, it is clear that the instruction contemplates Defendant's flight from Officer Romero to be the underlying factual basis for the charge.

**{17}** Given that the instructions for these charges focus on different conduct, and the facts presented at trial demonstrate a sequencing to the acts, we conclude that "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *See Vasquez*, 2024-NMCA-020, ¶ 8. Because the factual bases for the charged offenses are distinct, Defendant's conduct is not unitary and there is no double jeopardy violation with regard to Defendant's convictions for aggravated assault on a peace officer and evading an officer related to Defendant's interactions with Officer Romero. *See State v. Begaye*, 2023-NMSC-015, ¶ 20, 533 P.3d 1057 (providing that "the conduct underlying the offenses is unitary" if "the same conduct violates both statutes" (internal quotation marks and citation omitted); *see also State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (explaining that if the conduct is not unitary, "the protection against double jeopardy has not been violated and we proceed no further").

### 2. Defendant's Interactions With Detectives Romero and Campbell

**{18}** In contrast, we conclude that Defendant's conduct towards Detectives Romero and Campbell was unitary with regard to the charges of aggravated assault on a peace officer and aggravated battery on a peace officer—as charged in Counts 8 and 10—and resisting or abusing an officer—as charged in Counts 11 and 13. We explain.

**{19}** We begin by considering the elements of the charges at issue as they are set out in the jury instructions for those charges, *see State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 ("The conduct question depends to a large degree on the

elements of the charged offenses and the facts presented at trial." (internal quotation marks and citation omitted)). Our review of the jury instructions for the charges of aggravated assault on a peace officer and aggravated battery on a peace officer regarding Defendant's conduct towards the detectives establishes Defendant's attacks on the detectives with rocks and concrete as the underlying factual bases for the charges and convictions.

{20}    However, the underlying factual bases for the resisting or abuse of an officer charges are less apparent. For those charges, the jury instructions are vague and written in the alternative, requiring that the jury find that Defendant *either* "resisted or abused" the respective detective "in the lawful discharge of [their] duties." In other words, these instructions provide alternative bases for conviction: a finding that Defendant "resisted" Detectives Romero and Campbell *or* a finding that Defendant "abused" Detectives Romero and Campbell. For these charges, the jury returned general verdicts, preventing us from determining the alternative on which the jury relied for these convictions.

{21}    "Where, as here, the jury instructions provide alternative bases for conviction of an offense, and the record is silent as to which alternative the jury relied on for its verdict, we apply the *Foster* presumption, which demands that we assume that the jury relied on the alternative that may violate the protection against double jeopardy." *Reed*, 2022-NMCA-025, ¶ 10. In *State v. Foster*, our Supreme Court stated that "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds as recognized in Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. However, "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting Defendant of each crime." *Sena*, 2020-NMSC-011, ¶ 54. "Thus, the *Foster* presumption can be rebutted by evidence that each crime was completed before the other crime occurred," *Phillips*, 2024-NMSC-009, ¶ 40 (internal quotation marks and citation omitted), and by evidence that the "crimes were separated by both time and intervening events." *Sena*, 2020-NMSC-011, ¶ 56; *see also Franco*, 2005-NMSC-013, ¶ 7 ("The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)).

{22}    In this case, we conclude that the *Foster* presumption was not rebutted and is conclusive vis-à-vis Defendant's conduct towards Detectives Romero and Campbell. First, Defendant's acts of throwing a rock at Detective Campbell and striking Detective Romero with a piece of concrete would plainly fall within the scope of the "abused" alternatives under the jury instructions for the charges of resisting or abusing the detectives. *See Abuse, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/abuse (last visited Aug. 8, 2024) (defining "abuse" as "to use or treat so as to injure or damage" to "maltreat"). Given that Defendant's use of rocks to

attack the detectives satisfies the elements for the charges of aggravated assault on a peace officer and battery on a peace officer, as well as the "abuse" alternatives for the resisting or abuse charges, we apply *Foster* and presume that the jury relied on the "abuse" alternatives in finding Defendant guilty of both charges for resisting or abusing an officer. 1999-NMSC-007, ¶ 28.

**{23}** Second, we consider whether, under the "abusing" alternative, "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Franco*, 2005-NMSC-013, ¶ 7 (internal quotation marks and citation omitted). Based on the facts presented at trial, Defendant's acts in attacking Detectives Romero and Campbell are the only bases upon which the jury reasonably could have found that Defendant "abused" the officers. Although the facts also reflect that Defendant ignored their verbal directives, moved away from them, and physically resisted being handcuffed when they tackled him to the ground, we do not deduce the term "abuse" as defined above encompassing any of this conduct.

**{24}** Further, the State's presentation of the evidence and its opening and closing arguments do not differentiate between Defendant's conduct to allow for a finding of distinctness. There is no clear sequencing to Defendant's conduct that would allow us to determine that either the resisting or abuse of the detectives or the assault and battery of the detectives were completed before the other crimes occurred. *See Sena*, 2020-NMSC-011, ¶ 54 ("[T]he *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred."). The encounter between Defendant and the detectives was confined in both time and space, occurring over the course of approximately thirty seconds within a single area of an open field. *See Lorenzo*, 2024-NMSC-003, ¶ 7 (determining that multiple acts were "close together in time and space" and "contained spatially" when the episode occurred over a matter of minutes and took place in a single, confined area); *Phillips*, 2024-NMSC-009, ¶ 12. During that time, there is no intervening event nor sequence to Defendant's actions that would allow for a reasonable distinction between Defendant's moving away from the detectives, ignoring their commands, and attacking them with rocks and pieces of concrete. *See Phillips*, 2024-NMSC-009, ¶ 12. Additionally, it appears that Defendant's intent remained consistent throughout the encounter: to resist the detectives' attempts to apprehend him. *See id.* Thus, all relevant factors point toward a finding of unitary conduct. *See id.* ¶¶ 12, 38; *see also Silvas*, 2015-NMSC-006, ¶ 10 (providing that conduct was unitary when "[t]he [s]tate used evidence of [a] single moment in time to prove *both* [charged offenses]"). Because Defendant's acts lack any "sufficient indicia of distinctness," *see Contreras*, 2007-NMCA-045, ¶ 21 (internal quotation marks and citation omitted), we conclude that the *Foster* presumption remains unrebutted and, therefore, that the jury relied on Defendant's attacks on Detectives Campbell and Romero to support its guilty verdicts for both the aggravated assault on a peace officer and aggravated battery on a peace officer charges and the two charges for resisting or abusing an officer. *See Foster*, 1999-NMSC-007, ¶ 27.

## C.    Legislative Intent

**{25}** Having determined that Defendant's conduct was unitary, we now turn to consider whether the Legislature intended multiple punishments for the charges of aggravated assault upon a peace officer, aggravated battery upon a peace officer, and resisting or abusing an officer. *See Porter*, 2020-NMSC-020, ¶ 15. "In analyzing legislative intent, we first look to the language of the statutes to determine whether the Legislature explicitly authorized multiple punishments for unitary conduct." *Lorenzo*, 2024-NMSC-003, ¶ 13 (alteration, internal quotation marks, and citation omitted). Neither the statutes for aggravated battery upon a peace officer and aggravated assault upon a peace officer nor the statute for resisting or abusing an officer, explicitly authorize multiple punishments. *See* §§ 30-22-25(A), (C); -22(A)(1), (B); -1(D). Thus, "an analysis of the plain language of the statute[s] does not resolve the issue." *Lorenzo*, 2024-NMSC-003, ¶ 13.

**{26}** "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. When dealing with statutes that are "vague and unspecific" or "written with many alternatives," we apply a modified version of the *Blockburger* test. *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (emphasis, internal quotation marks, and citation omitted). The modified *Blockburger* test is appropriate where a statute's "generic terms make it possible for numerous forms of conduct to qualify as the requisite actus reus element of the statute." *State v. Luna*, 2018-NMCA-025, ¶ 14, 458 P.3d 457. Under this modified version of the statutory construction rule adopted in *Blockburger* and its progeny, we analyze the intent of the Legislature by "compar[ing] the elements of the offense, looking at the [s]tate's legal theory of how the statutes were violated," to determine whether multiple punishments are permissible. *See Lorenzo*, 2024-NMSC-003, ¶ 14 (internal quotation marks and citation omitted). "If we determine that one of the offenses subsumes the other offense, the double jeopardy prohibition is violated, and punishment cannot be had for both." *Id.* ¶ 16 (alteration, internal quotation marks, and citation omitted). In analyzing the State's legal theory of the case, "we review the statutory language, charging documents, and jury instructions used at trial." *See Porter*, 2020-NMSC-020, ¶ 19. "If the [S]tate's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening arguments, and closing arguments to establish whether the same evidence supported a defendant's convictions under [multiple] statutes." *See id.*

**{27}** This Court has previously held that "resisting arrest, as defined in Section 30-22-1(D), is a lesser included offense of battery upon a peace officer" because "one cannot commit battery on a peace officer without also resisting or abusing that officer contrary to Section 30-22-1(D)." *State v. Ford*, 2007-NMCA-052, ¶ 19, 141 N.M. 512, 157 P.3d 77; *see also State v. Diaz*, 1995-NMCA-137, ¶ 13, 121 N.M. 28, 908 P.2d 258 ("[A] defendant cannot commit peace officer battery without having also resisted or abused an officer."). Similarly, in regard to the charge of aggravated assault upon a peace officer, this Court has held that "[a]n assault with a deadly weapon cannot occur if resistance or abuse is not also present" and that "[a]nyone who commits aggravated

assault in violation of 30-22-22(A)(1) also commits resisting in violation of 30-22-1(D)." *Diaz*, 1995-NMCA-137, ¶ 14. Comparing the elements of the charges of aggravated assault upon a peace officer and aggravated battery upon a peace officer with resisting or abusing an officer as set out in their respective jury instructions for the counts related to Defendant's conduct towards Detectives Romero and Campbell, we similarly conclude that the elements of the charges of aggravated assault upon a peace officer and aggravated battery upon a peace officer overlap with the elements of resisting or abusing an officer. Accordingly, the charges for resisting or abusing an officer were subsumed by the charge of aggravated assault upon a peace officer and the charge of aggravated battery upon a peace officer.

**{28}**     Additionally, none of the testimony provided by any of the trial witnesses meaningfully differentiated between the Defendant's actions in resisting or abusing Detectives Romero and Campbell and Defendant's actions in throwing and striking the detectives with rocks or pieces of concrete. As we mentioned in our previous discussion regarding whether Defendant's conduct was unitary related to the charges of aggravated assault upon a peace officer, aggravated battery upon a peace officer and resisting or abusing of Detectives Romero and Campbell, the evidence demonstrated that Defendant's actions, including his use of the rocks and pieces of concrete, were part of a single, uninterrupted, course of conduct with a single intent: to resist or abuse the detectives to avoid being apprehended by law enforcement.

**{29}**     Moreover, the State's opening statement and closing argument do not distinguish between Defendant's conduct used to prove the aggravated assault upon a peace officer and aggravated battery upon a peace officer charges and the conduct used to prove the resisting or abusing an officer charges. *See Porter*, 2020-NMSC-020, ¶ 19 ("[W]e . . . review testimony, opening arguments, and closing arguments to establish whether the same evidence supported a defendant's convictions under [multiple] statutes."). Instead, the State generally presented its evidence and instructed the jury on the relevant charges without ever explicitly identifying to the jury, which conduct satisfied which charge. The State cannot now, on appeal, attempt to "adequately separate Defendant's conduct to support each conviction; rather, the State must do this work below to ensure that distinct conduct supports each charge tried." *Reed*, 2022-NMCA-025, ¶ 27.

**{30}**     Consequently, we conclude that the Legislature did not intend multiple punishments for Defendant's convictions for resisting or abusing an officer—as charged in Counts 11 and 13—and the convictions for aggravated battery upon a peace officer and aggravated assault upon a peace officer—as charged in Counts 8 and 10. Furthermore, because we have concluded that defendant's conduct towards Detectives Romero and Campbell was unitary and that the Legislature did not intend multiple punishment for Defendant's convictions for the charges based on his conduct towards the Detectives, we hold that Defendant's convictions for these charges is a violation of Defendant's right to be free from double jeopardy. Because the convictions for resisting or abusing an officer carry shorter sentences than the convictions for aggravated assault upon a peace officer and aggravated battery upon a peace officer, the

convictions for resisting or abusing an officer must be vacated. *See State v. Torres*, 2018-NMSC-013, ¶ 28, 413 P.3d 467 ("When double jeopardy protections require one of two otherwise valid convictions to be vacated, we vacate the conviction carrying the shorter sentence.").

## II. Missing Essential Element of Jury Instructions for Accidents Involving Death or Personal Injuries

**{31}** Next, Defendant argues that his third-degree felony convictions for accidents involving death or personal injuries, contrary to Section 66-7-201(C), should be vacated due to the district court's failure to instruct the jury as to an essential element of the charge. An individual is guilty of violating Section 66-7-201(C) if they "knowingly fail[] to stop [at the scene of an accident] . . . where the accident results in great bodily harm or death." Specifically, Defendant contends that the district court failed to instruct the jury that, to find Defendant guilty of a third-degree felony, they were required to find that Defendant "knowingly" failed to stop or comply with the requirements of NMSA 1978, Section 66-7-203 (1978). Because this issue was not preserved below, we review for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633; *see also* Rule 12-321(B)(2)(c) NMRA (providing for review by appellate court, in its discretion, of issues involving fundamental error that can be raised pursuant to case law, statute, or rule for first time on appeal). In reviewing whether error in jury instructions amounts to fundamental error, we engage in a two-prong analysis to determine (1) whether error occurred, i.e., whether a reasonable juror would have been misled or confused by the inaccurate jury instruction; and (2) whether the error was fundamental. *See State v. Sivils*, 2023-NMCA-080, ¶¶ 10-11, 538 P.3d 126. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 8.

**{32}** It is undisputed that the "knowingly" element of Section 66-7-201(C) was omitted from the provided jury instructions.[3] This element is the only element that differentiates the third-degree felony charge from the fourth-degree felony charge under Section 66-7-201. *Compare* § 66-7-201(B), *with* § 66-7-201(C). Accordingly, it was error for the district court to fail to instruct the jury as to the "knowingly" element of Section 66-7-201(C). *See State v. Rhea*, 1979-NMCA-121, ¶ 4, 93 N.M. 478, 601 P.2d 448 ("Failure to instruct on an essential element is reversible error.").

**{33}** Having established that the jury instruction was erroneous, we turn to the second prong of the test: whether the error was fundamental. *See Sivils*, 2023-NMCA-080, ¶

---

3We note that at the time of trial of this case there were no uniform jury instructions applicable for charges under Section 66-7-201, and that in December 2023 our Supreme Court promulgated UJI 14-4513 NMRA (Leaving the scene of an accident involving death or personal injury; essential elements.) for use in connection with charges, pursuant to Section 66-7-201(B) or (D), and UJI 14-4514 NMRA (Knowingly leaving the scene of an accident involving great bodily harm or death; essential elements.) for use in connection with charges, pursuant to Section 66-7-201(C). Although both UJIs 14-4513 and 14-4514 include an element that "[t]he defendant knew that there was an accident" only UJI 14-4514, includes the additional element that "[t]he defendant knew that the accident involved injury" presumably to account for the additional element of "knowingly" in Section 66-7-201(C).

11. "The failure to instruct the jury on an essential element, as opposed to a definition, *ordinarily* is fundamental error." *Id.* (internal quotation marks and citation omitted). However, the failure to instruct on an essential element is not fundamental error under either of two circumstances: one that focuses "on what the jury in a particular case *actually* found" and one that focuses on "what the jury *would have* found had it been properly instructed." *State v. Ocon*, 2021-NMCA-032, ¶ 9, 493 P.3d 448. In the first circumstance, the failure to instruct is not fundamental error when we conclude that the jury implicitly found the missing element. *See id.* ¶ 10. However, we cannot conclusively say in this instance that, based upon the evidence presented at trial and the jury's general verdict, the jury's finding "necessarily include[d] or amount[ed] to a finding on an element omitted from the jury's instructions." *See State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

{34}   In the second circumstance, the failure to instruct on an essential element does not rise to the level of fundamental error when "the jury's findings and the unchallenged evidence on which those findings rest[] show that the jury, if properly instructed, undoubtedly would have found [the] omitted elements." *Ocon*, 2021-NMCA-032, ¶ 13. However, we can only conclude as such if (1) "the missing element was not disputed or in issue at trial" and (2) "proof of the omitted element is so strong that no rational jury could have failed to find that element." *See Sivils*, 2023-NMCA-080, ¶ 21 (internal quotation marks and citation omitted).

{35}   As to the first prong of this test, at trial, the defense never contended, nor did any evidence suggest, that, if Defendant was the driver of the vehicle, Defendant did not possess the requisite knowledge to be charged under Section 66-7-201(C). Therefore, the missing element was not in dispute.

{36}   With the first prong having been met, we move next to consider the second prong: "proof of the omitted element is so strong that no rational jury could have failed to find that element." *See Sivils*, 2023-NMCA-080, ¶ 21 (internal quotation marks and citation omitted). The "knowingly" element within Section 66-7-201(C) has never been conclusively defined under New Mexico law. However, it is clear that, given the facts and circumstances established at trial, "[u]nder any interpretation of the 'knowingly failed' portion of the statute, Defendant clearly knew what [they] needed to know." *See State v. Cumpton*, 2000-NMCA-033, ¶ 15, 129 N.M. 47, 1 P.3d 429. We explain.

{37}   On June 7, 2018, Defendant was driving at a high rate of speed when he rear-ended a Kia, causing it to leave the roadway and strike an electric pole. Defendant then veered into oncoming traffic, resulting in a head-on collision between the Dodge truck driven by Defendant and a Ford Explorer. The driver of the Explorer was killed as a result of the collision. The passenger of the Explorer survived with serious injuries. Defendant fled the scene, resulting in the charges under Section 66-7-201(C).

{38}   Testimony of the witnesses at trial revealed that the collision between Defendant's truck and the Explorer was highly destructive. When Defendant's truck collided with the Explorer, the accelerator of the truck was depressed to 100 percent

and the truck was traveling at a speed of 75 miles per hour, nearly double that of the 45 mile-per-hour speed limit in the area where the crash occurred. The force of the collision was powerful enough to push the Explorer 105 feet backwards. Due to the high speed of the collision, the damage to the Explorer was extensive, with the interior of the vehicle having been displaced by approximately 2 feet. The vehicle had been displaced to the extent that there was "no room left on the driver side area," and the steering wheel had been shoved to the middle of the vehicle. The driver's side door was struck with such force that it wrapped inside the front of the Defendant's truck and essentially disappeared. Additionally, the Explorer was so severely disfigured that it needed to be dismantled to extricate the driver and the passenger.

**{39}** The damage to the truck driven by Defendant was also extensive. Defendant also sustained injuries consistent with those found in automobile accident victims. However, given the extreme nature of the collision, a crash reconstruction expert testified that it was "amazing" that a person had been able to walk away from the accident.

**{40}** Given the high rate of speed at which Defendant was traveling, the extreme amount of force exerted on the Explorer in the head-on collision, the extensive damage to both vehicles, the extent of the severe and fatal injuries sustained by the driver and passenger of the Explorer, and the overall violent and highly destructive nature of the collision, it is clear that "[u]nder any interpretation of the 'knowingly failed' portion of [Section 66-7-201(C)], Defendant clearly knew what he needed to know." *See Cumpton*, 2000-NMCA-033, ¶ 15. Therefore, we find that, despite the omission of the essential "knowingly" element from the jury instructions, "proof of the omitted element is so strong that no rational jury could have failed to find that element." *See Sivils*, 2023-NMCA-080, ¶ 21 (internal quotation marks and citation omitted). Because the essential element was undisputed and indisputably proven, the failure to instruct the jury on this essential element does not constitute fundamental error. We affirm the convictions under Section 66-7-201(C).

### III.   Speedy Trial Waiver

**{41}** Additionally, Defendant argues that, on three separate occasions, the district court improperly coerced him into waiving his right to a speedy trial. Defendant contends that the waivers were unknowing, coercive and involuntary, and therefore ineffective. However, even if we presume that Defendant's waivers were involuntary and, accordingly, that he did not waive his right to a speedy trial, Defendant fails to convincingly argue that his right to a speedy trial was otherwise violated.

**{42}** Defendant admits that he did not preserve any argument regarding his right to a speedy trial. Despite the lack of preservation, an appellate court may, in its discretion, review speedy trial claims for fundamental error. *See State v. Garcia*, 2019-NMCA-056, ¶ 38, 450 P.3d 418. However, review of an unpreserved speedy trial claim for fundamental error is reserved for circumstances in which there has been "a striking violation of the constitutional right to a speedy trial [such] that it would be appropriate to

consider that issue for the first time on appeal." *See State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Defendant does not convince us that review is appropriate in this case.

**{43}** Review of a speedy trial claim for fundamental error is an extensive process, requiring the application of a four-part balancing test comprised of the following factors: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of their right to a speedy trial, and (4) the prejudice to the defendant. *State v. O'Neal*, 2009-NMCA-020, ¶ 14, 145 N.M. 604, 203 P.3d 135. However, Defendant's argument that his speedy trial rights were violated is limited to a single paragraph, which generally argues that the two-year and four-month delay was unconstitutional. Defendant does not cite any authority for this proposition, and does not meaningfully engage with the relevant factors necessary for a determination that an individual's speedy trial rights were violated. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (explaining that where a party fails to cite any authority in support of an issue, appellate courts will not consider the issue); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (noting that appellate courts have no obligation to review unclear or undeveloped arguments). Because Defendant does not meet his burden of sufficiently demonstrating error, we decline to review for fundamental error and affirm the district court. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (providing that "[t]here is a presumption of correctness in the district court's rulings" and "it is [the d]efendant's burden on appeal to demonstrate any claimed error below" (alterations, internal quotation marks, and citation omitted)).

## IV. Plea Agreement

**{44}** Defendant further argues that the district court improperly refused to accept his guilty plea, thereby depriving him of the opportunity to gain the benefits of a negotiated plea agreement and reduced sentence. Again, Defendant concedes that he failed to preserve this argument. Accordingly, we only reverse if the district court's refusal to accept Defendant's plea constituted fundamental error. *See State v. Hodge*, 1994-NMSC-087, ¶ 25, 118 N.M. 410, 882 P.2d 1 (providing that an unpreserved claim may still be reviewed for fundamental error if "review is necessary to prevent a miscarriage of justice or if the question of guilt is so doubtful that it would shock the conscience of the Court to permit the conviction to stand"). Defendant does not convince us that reversal is warranted.

**{45}** Before accepting a guilty plea, a district court must determine that the defendant understands the contents and consequences of the plea agreement, and that the plea "[is] knowingly and voluntarily given." *State v. Ramirez*, 2011-NMSC-025, ¶ 9, 149 N.M. 698, 254 P.3d 649 (internal quotation marks and citation omitted); *see* Rule 5-303(F), (G) NMRA. "A plea is not knowing, intelligent, and voluntary unless the defendant understands [their] guilty plea and its consequences." *Ramirez*, 2011-NMSC-025, ¶ 9 (alteration, internal quotation marks, and citation omitted). In this case, Defendant appeared before the district court to enter a guilty plea on July 25, 2019, and on September 9, 2019, and on each occasion, the court did not accept the plea

agreement.[4] At the plea hearing held on July 25, 2019, as the district court was beginning its plea colloquy with Defendant, Defendant spoke to the court about the evidence in the case, indicating that he wanted his attorneys to review certain evidence that the police had on a microphone and that he wanted the court and the prosecutor "to do [Defendant] the favor of digging out all of the proof of the evidence that they have." The court declined to proceed with the plea hearing, finding that Defendant was not ready to take the plea because Defendant wanted his attorneys to review the evidence. At the plea hearing on September 9, 2019, Defendant did not meaningfully address the court's questions regarding the voluntariness of the plea agreements, and seemingly continued to negotiate for a reduced sentence not found within his plea. The district court did not accept Defendant's plea and set the case for trial.

**{46}**    On appeal, Defendant contends that the district court improperly refused to accept Defendant's plea agreement, arguing that the district court's decision was impermissibly based on a single question asked by Defendant during the plea colloquy. However, Defendant does not cite any legal authority for the proposition that the district court's actions "deprived [the defendant] of his qualified right to plead guilty" and that "[s]uch a deprivation shocks the conscience and casts doubt on the fairness of the prosecution and trial." *See Vigil-Giron*, 2014-NMCA-069, ¶ 60; *Guerra*, 2012-NMSC-014, ¶ 21. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104. "When a criminal conviction is being challenged, counsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice." *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254. As such, Defendant has not sufficiently demonstrated that the district court's actions constitute fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks and citation omitted)). We accordingly affirm the district court's rejection of Defendant's proposed plea agreements.

## V.    Habitual Offender

**{47}**    Finally, Defendant contends that the district court erred in enhancing his original sentence due to his status as a habitual offender, arguing that the district court lacked the jurisdiction to do so. Before this case, Defendant received two federal convictions for unlawful reentry of a deported alien in violation of 8 U.S.C. § 1326. Because such offenses would not have constituted felonies under New Mexico law at the time of conviction, Defendant argues that the district court was not permitted to use the prior convictions to sentence him as a habitual offender in the present case. We disagree.

---

[4]Defendant also attempted to enter his guilty plea on July 9, 2019, but because the district court wanted the advice given to Defendant concerning the immigration consequences to be in writing and placed on the record, the plea hearing was rescheduled.

**{48}** NMSA 1978, Section 31-18-17 (2003) provides that a defendant convicted of a noncapital felony in New Mexico may have the basic sentence for that crime enhanced if they are a habitual offender. The standard for habitual offender sentencing in New Mexico previously required that the prior, out-of-state convictions also constitute felonies under New Mexico law. *See State v. Garcia*, 1978-NMCA-109, ¶ 14, 92 N.M. 730, 594 P.2d 1186. However, well before Defendant's trial and sentencing, the statute was amended, and the applicable version states that a prior felony conviction, with the attached sentence having been completed less than ten years prior to the instant case, may be used to enhance a present sentence if:

> (a)  the conviction was rendered by a court of another state, the United States, a territory of the United States or the commonwealth of Puerto Rico;

> (b)  the offense was punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year; *or*

> (c)  the offense would have been classified as a felony in this state at the time of conviction.

Section 31-18-17(D)(2) (emphasis added).

**{49}** Defendant contends that New Mexico courts have never acknowledged whether this version of the statute still requires that the out-of-state convictions also be classified as felonies under New Mexico law, and encourages us to read Section 31-18-17(D)(2)(c) not as an alternative to Subsection (D)(2)(a) and (b), as indicated by the statutory language, but rather as an additional mandatory requirement for habitual offender sentencing. However, Defendant is incorrect. New Mexico courts have held that, under the current version of the statute, a prior out-of-state conviction may be used to enhance a current sentence as long as Section 31-18-17(D)(2)(a) is met, as well as *either* Subsection (D)(2)(b) or (c). *See State v. Moya*, 2007-NMSC-027, ¶¶ 18-20, 141 N.M. 817, 161 P.3d 862 (holding that a prior out-of-state conviction "can be used to increase a basic sentence under the Habitual Offender Act when either Subsection (D)(2)(b) *or* (c) are satisfied" (emphasis added)); *see also State v. Harris*, 1984-NMCA-003, ¶ 34, 101 N.M. 12, 677 P.2d 625 (interpreting a prior, but highly similar, version of the statute to show that "[t]he use of the semicolon at the end of [Section 31-18-17(D)](2)(a) indicates that [Subsection (D)](2)(b) is also a requirement" and that "[t]he use of the disjunctive 'or' at the end of [Subsection (D)](2)(b) . . . indicates that [Subsection (D)](2)(c) may be used in place of [Subsection (D)](2)(b)" (citations omitted)). Therefore, it is not necessary for a prior conviction to have been classified as a felony under New Mexico law at the time of conviction, as stated in Subsection (c), as long as the prior conviction meets the requirements of Section 31-18-17(D)(2)(a), (b).

**{50}** Here, it is uncontested that Defendant's prior convictions were rendered in a court of the United States, and were punishable by sentences greater than one year. Accordingly, the requirements of Subsections (a) and (b) under Section 31-18-17(D)

were met and the district court did not err in enhancing Defendant's sentence under the Habitual Offender Act. *See* § 31-18-17(D)(2).

**CONCLUSION**

**{51}** For the foregoing reasons, we reverse Defendant's two convictions for resisting or abusing an officer, contrary to Section 30-22-1(D)—as charged in Counts 11 and 13—and remand with directions that the district court vacate those convictions, dismiss those charges, and resentence Defendant. Otherwise, we affirm.

**{52}   IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**